Michael Steinmetz (MS3164)
GARSON, SÉGAL, STEINMETZ, FLADGATE LLP
164 West 25th Street, 11th Floor
New York, NY 10001
Telephone: (212) 380-3623
Email: ms@gs2law.com

*Attorneys for Plaintiff, EZ Drop Shipping, LLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EZ DROP SHIPPING, LLC d/b/a IESP GROUP<br><br>　　　　　　　Plaintiff,<br>　-against-<br><br>CODY ALFREY, individually, and COORDINATES PPE LLC<br><br>　　　　　　　Defendants. | Civil Case No.___24-522_____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

　　　Plaintiff, EZ Drop Shipping, LLC d/b/a IESP Group ("EZ Drop" or "Plaintiff"), by and through its attorney of record, hereby alleges as follows:

### NATURE OF THE ACTION

　　1. This is an action for breach of contract, fraudulent inducement, unjust enrichment, and account stated.

　　2. The above-captioned Defendants received a substantial investment from Plaintiff pursuant to an agreement whereby Plaintiff was promised a return of that investment by October 2022. Specifically, Defendants agreed to use the Plaintiff's investment to purchase and sell certain iHealth Covid-19 Antigen Home Test Kits with the profits to be shared between Coordinates PPE LLC and Plaintiff. However, Defendants failed to provide Plaintiff with that return.

　　3. Defendants' conduct has damaged Plaintiff, who has not received the return it is owed by Defendants.

1

## PARTIES

4. Plaintiff, EZ Drop Shipping, LLC has a principal business address at 802 East 92nd Street, Brooklyn, New York, 11236.

5. Defendant Coordinates PPE, LLC ("CPPE") is a Florida limited liability company with an address of 1620 N US HWY 1 Ste 11, Jupiter, Florida 33469.

6. Defendant Cody Alfrey is an individual residing in North Palm Beach, Florida.

## JURISDICTION

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) because the amount in dispute exceeds $75,000 and the controversy is between citizens of different States.

8. This Court has general personal jurisdiction over Defendants as they conduct systematic and continuous business within New York State. Indeed, Defendants directly reached out to Plaintiffs within this jurisdiction to form the agreement which is the subject of this complaint.

9. Further, this Court has specific personal jurisdiction over Defendants because their breach and misconduct has harmed the Plaintiff within this judicial district.

## VENUE

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this judicial district and have harmed Plaintiff in this judicial district.

## FACTS

11. On August 31, 2022, the parties entered into an agreement regarding a business investment to sell certain COVID-19 products (the "Agreement"). A true and complete copy of the Agreement is attached hereto as **Exhibit A**.

12. The Agreement establishes, in part, that Plaintiff would fund Defendants' sale of iHealth COVID-19 Antigen Home Kits (the "Product") by providing Defendants with an investment of $651,980.00 (the "Initial Investment").

13. The Agreement includes a representation whereby Defendants promised that the Product had already been delivered to and accepted by the purchaser, "and that there is no valid reason for the [Product] to be rejected, returned, or the payment therefor to be otherwise disputed."

14. Plaintiff paid the Initial Investment in full.

15. The Agreement required Defendants to pay Plaintiff one hundred percent of the Initial Investment plus fifty percent (50%) of the profits made on the resale of the Product within 60 days from execution of the Agreement (by October 28, 2022).

16. Per the Agreement, Plaintiff's portion of the profit from the resale of the Product amounted to $140,840.00 and that Plaintiff would recoup $792,820.00 in total (the "ROI").

17. That said, although Plaintiff accepted Defendants' representation that 50% of the resale profits was $140,840.00, Plaintiff recently discovered that sales proceeds paid to Defendants were $1,277,640.00 and therefore, 50% of the profits would have been much higher than what was represented to Plaintiff. The Purchase Order from August 17, 2022 is attached hereto as **Exhibit B**.

18. However, Defendants did not pay the ROI to Plaintiff by October 28, 2022 and in accordance the Agreement.

19. Instead, on October 25, 2022, Defendants reached out to Plaintiff offering to reinvest its Initial Investment with Defendants for a second round (the "Second Investment").

20. The understanding was that Plaintiff would receive, in addition to the ROI, a return on the Second Investment on the same terms and Plaintiff would receive fifty (50%) of the profits made on the second resale of the Product to be paid in 60 days (by no later than February 28, 2023).

21. Upon information and belief, 50% of the profits from the second resale of the Product was at least as much as $140,840.00.

22. However, Defendants paid only a portion of the original ROI to Plaintiff and already five (5) days after the promised deadline of October 28, 2022.

23. On November 2, 2022, Defendants only paid Plaintiff $580,000.00 (already $212,820.00 less than Plaintiff's total ROI).

24. On December 30, 2022, Defendants text messaged Plaintiff admitting that it owed at least $60,000.00 to Plaintiff but was unable to make the payment until the following week. Then again, on January 4, 2023, Defendants admitted to owing Plaintiff but still unable to pay. Screenshots of these exchanges are displayed below:




25. Then, between January 5, 2023 and September 15, 2023, Defendants made varied payments to Plaintiff totaling $53,250.00.

26. The Agreement also provides that Defendants' failure to pay the ROI on time entitles Plaintiff to an additional 25% of the total profit per month. As such, Defendants also owe Plaintiff, at a minimum, an additional $70,420.00 for the first failure to pay Plaintiff by the return deadline and presumptively the same amount for failing to pay Plaintiff by the second-round return deadline (a total of $140,840.00).

27. To date, Defendants have not paid the full ROI.

28. Further, in Section 6 of the Agreement, Cody Alfrey expressly agreed to personally guarantee payment to Plaintiff.

29. Plaintiff understood Cody Alfrey's personal guarantee as an added measure of certainty that the profits were and would be realized.

30. As of a result of Defendants breach of the Agreement, Defendants owe Plaintiff at least as much as $441,250.00 to date.

### FIRST CLAIM FOR RELIEF - BREACH OF CONTRACT
### (Against All Defendants)

31. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

32. The parties entered into an Agreement on August 31, 2022.

33. Plaintiff fully performed its obligations under the Agreement as described above.

34. Defendants breached the Agreement by (i) failing to fulfill their obligation to pay the ROI to Plaintiff by October 28, 2022; (ii) failing to fulfill their obligations to pay the ROI for the Second Investment to Plaintiff by February 28, 2023; and (iii) Cody Alfrey's individual failure to fulfill his personal guarantee to pay the outstanding fees to Plaintiff.

5

35. As a result of the foregoing, Defendants have damaged Plaintiff at least as much as $441,250.00.

## SECOND CLAIM FOR RELIEF - UNJUST ENRICHMENT
### (Against All Defendants)

36. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 35 as if fully set forth herein.

37. Plaintiff provided Defendants with the Initial Investment and the Second Investment.

38. Defendants accepted the Initial Investment and the Second Investment and have not returned either in full.

39. Additionally, Defendants have withheld the majority of the profits realized from the resale of Product to Plaintiff's detriment.

40. As such, Defendants received the benefits of Plaintiff's Initial Investment and Second Investment without compensating Plaintiffs accordingly.

41. Plaintiff is entitled to, at a minimum, a return of its Initial Investment and Second Investment.

42. Defendants further received profits on their sale of the Product and have improperly withheld Plaintiff's share of such profits.

43. By reason of the foregoing, Defendants were unjustly enriched in an amount at least as much as $441,250.00 to date.

44. As a result of the foregoing, Defendants have damaged Plaintiff in an amount of no less than $441,250.00.

## THIRD CLAIM FOR RELIEF - ACCOUNT STATED
### (Against All Defendants)

45. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

46. Pursuant to the Agreement and Plaintiff's full performance, Defendants owe an outstanding debt to Plaintiff in an amount at least as much as $441,250.00.

47. Defendants have repeatedly admitted via text to Plaintiff that it owes Plaintiff money.

48. As recently as November 2023, Defendants have acknowledged that they owe funds to Plaintiff.

49. Defendants have acknowledged their breach of the Agreement and their outstanding debt to Plaintiff.

50. Upon information and belief, Defendants are aware and have acknowledged that the account stated is at least as much as $441,250.00 and have failed to pay such amount to Plaintiff.

## FOURTH CLAIM FOR RELIEF – FRAUDULENT INDUCEMENT
### (Against All Defendants)

51. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 50 as if fully set forth herein.

52. Defendants represented in the Agreement that the Product had already been delivered to and accepted by the purchaser, "and that there is no valid reason for the [Product] to be rejected, returned, or the payment therefor to be otherwise disputed."

53. Plaintiff entered into the Agreement based on this representation which assured that Plaintiff's ROI was a sure deal.

54. However, Defendants failed to pay Plaintiff its ROI.

55. Later in October 2022, upon information and belief, Defendants misrepresented to Plaintiff that "[t]he Medicar (sic) program has been extended through February. If you would like to speak with your partner and go for an additional term let me know. We would pay the partnership fee as scheduled and turn the principal over into product."

56. Upon information and belief, Defendants intended to lure Plaintiff into a Second Investment round as a means to delay and withhold paying Plaintiff a portion of its ROI well beyond the agreed payment deadlines.

57. Upon information and belief, either one or both of Defendants aforementioned representations were made knowing they were false.

58. As a result of Defendants false representations, Plaintiff sustained damages in an amount no less than $441,250.00.

## JURY TRIAL DEMANDED

Plaintiff hereby requests a trial by jury on each claim for relief alleged in the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants for an award of:

    i.    Damages in the amount of no less than $441,250.00;

    ii.    Reasonable attorneys' fees, interests and costs of suit; and

    iii.    Such other and further relief as the Court deems equitable and just.

Dated: January 24, 2024
       New York, New York

**GARSON, SÉGAL, STEINMETZ FLADGATE LLP**

By:    /s/Michael Steinmetz
Michael Steinmetz (MS3164)
164 West 25th Street, 11th Floor
New York, NY 10001
Tel: (212) 380-3623
Email: ms@gs2law.com

8